Samuel **LOPEZ QUIÑONEZ,**
et als., **Plaintiffs**

v.

**PUERTO RICO NATIONAL GUARD,**
et als., **Defendants.**

**Civil No. 04–2187(DRD).**

United States District Court,
D. Puerto Rico.

May 18, 2007.

Efrain Maceira–Ortiz, Urb. Perez Morris, San Juan, PR, for Plaintiffs.

Jorge Martinez–Luciano, Pedro Ortiz Alvarez Law Offices, Ponce, PR, Francisco A. Ojeda–Diez, P.R. Department of Justice–Federal Litigation, San Juan, PR, for Defendants.

### AMENDED OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court is Plaintiff's *Motion for Reconsideration* (Docket No. 139), filed on October 16, 2006. Plaintiff avers that although the Court, in its *Amended Opinion and Order* (Docket No. 138) addressed the political discrimination issue, the Court failed to address for the purposes of preliminary injunctive relief, Plaintiff's allegation regarding the Defendants violation of Plaintiff's due process of law (non compliance with published Rules of Conduct and Disciplinary Measures applicable to the National Guard), during the termination process of Plaintiff's career employment.

As to said alleged violation, the essence of Plaintiff's allegation is that by terminating his employment, the Puerto Rico National Guard (PRNG), applied the most drastic measure, in violation of their own

Rules of Conduct and Disciplinary Measures Manual. Plaintiff alleges that PRNG's Rules of Conduct require uniformity in the application of the disciplinary measures. Plaintiff avers that according to the clear provisions of the Rules of Conduct, termination of employment is not authorized for any of the offenses allegedly committed by the Plaintiff. Plaintiff therefore contends that the Defendants violated the provisions of their own Rules of Conduct and Disciplinary Measures. Furthermore, Plaintiff avers that before the year 2004, no disciplinary procedure was ever taken against him, nor was he served with a single warning letter by the Human Resources Office or admonished in any way. Plaintiff, further, respectfully urges the Court to issue a determination as to whether the position he held as Director of General Services was one of trust requiring political affiliation or a career position protect from political patronage.

Also joined as pending before the Court is Defendants' *Urgent Motion to Request a Ruling on the Individual–Capacity Defendants' Plea for Qualified Immunity* (Docket No. 141), filed on October 24, 2006. Defendants aver that the instant case should be dismissed pursuant to the fact that plaintiff, Samuel Lopez Quiñones' former position as Director of the General Services Section of PRNG, constitutes a "trust position", subject to the exception stated in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Furthermore, Defendants' state that although they are confident that this Court will decide the issue regarding Plaintiff's position, in their favor and/or regardless of the outcome of said issue, Defendants aver that this case presents a close enough call for Defendants' individual-capacity to be shielded by qualified immunity.

After reviewing all of the evidence submitted in the record, the Court concludes that Plaintiff's procedural due process claim falls short of the mark. Therefore, Plaintiff's *Motion for Reconsideration* (Docket No. 139) is hereby **DENIED**. Furthermore, the Court finds that Plaintiff's former position was clearly a **non-political** career position protected from political patronage. As to Defendants' individual-capacities being shielded by qualified immunity, it is the Court's conclusion that Defendants' individual-capacities are not shielded by qualified immunity as Plaintiff's duties did not entail political affiliation as a requirement. For said reason, Defendants' *Urgent Motion to Request a Ruling on the Individual–Capacity Defendants' Plea for Qualified Immunity* (Docket No. 141) is hereby **DENIED**. The Court explains both rulings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, Samuel López Quiñones, Iris Grisel Nieves Hernández, and the conjugal partnership constituted by them submitted an injunctive relief Claim in Federal Court, for violations to the First, Fifth and Fourteenth Amendment on November 11, 2004 (Docket No. 1). The plaintiff, Samuel LópezQuiñones was hired as Director of the General Services Section of PRNG on March 3, 1997. Plaintiff alleges that due to his political affiliations, the Defendants incurred in a campaign to despoil him of his duties which culminated in his employment termination on July 11, 2005. *See* Docket No. 92–2. On July 27, 2007, Plaintiffs moved for *Preliminary Injunction in the Form of Reinstatement* (Docket No. 46). Promptly, on July 29, 2005, Defendants filed a *Response in Opposition to Plaintiffs' Request for Preliminary Injunction* (Docket No. 49). Regarding said matter, the Court held several hearings that began on September 8, 2005 and ended on July 6, 2006. In the interim, on

November 8, 2005, Defendants' filed a *Memorandum of Law in Support of Defendants' Request for Denial of Injunctive Relief, as a Matter of Law* (Docket No. 89) in support of their *Response in Opposition to Plaintiffs' Request for Preliminary Injunction* (Docket No. 49) which as aforementioned, was filed on July, 29, 2005. Through said Memorandum, Defendants' stated that before presenting any evidence regarding the Rule 65 proceedings, the Court should decide whether or not Plaintiff's former position enjoyed First Amendment protection against political patronage.

On March 21, 2006, before the final injunction hearings were held, the Court ORDERED (Docket No. 106) the parties to file a final brief, making specific references to the record, stating their respective contentions as to the preliminary injunction pending before the Court. Accordingly, on August 7, 2006 *Plaintiff's Statement of Uncontested Facts in Support of Injunction Relief, as a Matter of Law* (Docket No. 122–1) and *Plaintiffs' Brief in Support of Request for Injunctive Relief* (Docket No. 122–2), were filed in compliance with the Court's ORDER. On September 11, 2006 *Defendants' Preliminary Injunction Memorandum* (Docket No. 125) was filed. Furthermore, on September 15, 2006 (Docket No. 128), the Court ordered the parties to inform the Court as to Plaintiff's degree of discretion when supervising bids carried out in the purchasing area and when leasing the establishments of the General Services Section, deeming it pertinent when deciding whether Plaintiff's position was a "career" or a "trust" position. Accordingly, Defendants filed their Motion In Compli-

ance (Docket No. 129) on September 19, 2006 and Plaintiffs filed their Informative Motion (Docket No. 131) on September 19, 2006.[1] On October 2, 2006, the Court entered an *Amended Opinion and Order* (Docket No. 138), denying Plaintiff's Motion for Preliminary Injunction as the Court found that whether or not Plaintiff was terminated on the merits for his political affiliation or for a valid business reason was close. The conclusion on the matter as to the merits depended on issues of credibility and/or motive and intent which the Court preferred to be determined by a jury. On October 16, 2006, Plaintiffs filed the above described pending *Motion for Reconsideration* (Docket No. 139).

## II. APPLICABLE LAW

### A. MOTION TO DISMISS STANDARD UNDER RULE 12(b)(6)

In ruling on a motion to dismiss, a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs. *Alternative Energy, Inc. v. St. Paul Fire and Marine Insurance Company*, 267 F.3d 30, 33 (1st Cir.2001). Dismissal under FED. R. CIV. PROC. 12(b)(6) is appropriate only if the facts alleged by the plaintiff, taken as true, do not justify recovery. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). Therefore, in order to survive a motion to dismiss, plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513 (1st Cir.1988).

---

1. On October 18, 2007 (Docket No. 140), Plaintiff was also required to inform the Court as to the applicability of the of the Puerto Rico Auction Law to the Puerto Rico National Guard. Accordingly, Plaintiffs complied with said order by filing their *Motion In Compliance* (Docket No. 143) on October 25, 2006.

However, the Court is not obligated to accept plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3. The Court must only accept those facts that are "well pleaded," limiting its inquiry into the allegations of the complaint. *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir.1978). In sum, the Court's focus should always be on "whether a liberal reading of [the complaint] can reasonably admit of a claim. . . ." *Id.; see also Rogan v. Menino*, 175 F.3d 75 (1st Cir.1999).

A district court's dismissal of a claim under Rule 12(b)(6) is reviewed *de novo* by the appeals court; such court "accept[s] as true all well-pleaded factual averments and indulg[es] all reasonable inferences in the plaintiff's favor." *Calderon–Ortiz v. La-Boy–Alvarado*, 300 F.3d 60, 62–63 (1st Cir. 2002); *SEC v. SG Ltd.*, 265 F.3d 42, 46 (1st Cir.2001). Accordingly, "if the facts contained in the complaint, viewed in this favorable light, justify recovery under any applicable legal theory", any order of dismissal shall be set aside. *Calderon–Ortiz*, 300 F.3d at 63 (*quoting, Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)); *Aulson*, 83 F.3d at 3.

### B. QUALIFIED IMMUNITY

■ Qualified immunity shields public officials performing discretionary functions from civil damages, so long as their conduct does not violate clearly established statutory or constitutional rights, of which an objectively prudent person would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Ringuette v. City of Fall River*, 146 F.3d 1, 5 (1st Cir.1998). Essentially, "[q]ualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he con-

tours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219,1227, 137 L.Ed.2d 432 (1997) (*citations omitted); Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Qualified immunity is a judge-made doctrine created to limit the exposure of public officials to damages actions, thereby fostering the effective performance of discretionary functions in the public sector. *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The reach of this doctrine is long, but not infinite. It protects all but "the plainly incompetent [and] those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). As that exclusion has been interpreted, the doctrine does not shield public officials who, from an objective standpoint, should have known that their conduct was unlawful. *Davis v. Scherer*, 468 U.S. 183, 193, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Surprenant v. Rivas*, 424 F.3d 5, 14 (1st Cir.2005).

*Pagan v. Calderon*, 448 F.3d 16, 31 (1st Cir.2006).

■ The First Circuit Court of Appeals has developed a three-step test to determine whether or not a government official is shielded by qualified immunity:

'(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.' *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir.2004). . . . A court should conduct the

analysis in this sequence and at the earliest possible stage in the case. [*Cox v.*] *Hainey,* 391 F.3d [25] at 29–30 [(1st Cir.2004)].

*Rivera Rodriguez v. Beninato,* 469 F.3d 1, 4 (1st Cir.2006).

The first two prongs of this test are questions of law for the court to decide. The third prong is also a question of law, but factual questions, to the extent they are antecedent to this determination, must be determined by a jury. While preliminary factual questions regarding qualified immunity are sent to the jury, the legal question of the availability of qualified immunity is 'ultimately committed to the court's judgment.'

*Rodriguez–Marin v. Rivera–Gonzalez,* 438 F.3d 72, 83 (1st Cir.2006)(*quoting Acevedo–Garcia v. Monroig,* 351 F.3d 547, 563 (1st Cir.2003))(*internal citations omitted* ).

## III. ANALYSIS

First, the Court finds that the allegations averred in Plaintiffs *Motion for Reconsideration* (Docket No. 139), as to the Court failing to address, for the purposes of preliminary injunctive relief, the Defendants alleged violation of Plaintiff's procedural due process of law during the termination process of his career employment, **are unsupported by law on the merits of the request.** As aforementioned, Plaintiff avers that assuming that he failed in adequately performing his duties in the Puerto Rico National Guard, which he denies, by terminating his employment, the Defendants applied the most drastic measure, **in violation of their own Rules of Conduct and Disciplinary Measures of the Puerto Rico National Guard, which require uniformity in the application of the disciplinary measures.**

Although the Circuit Court has stated that the termination of a career employee, who's position does not entail a political or policymaking position, requires due process, "[t]he crucial question becomes: what process was due?" *See Torres–Rosado v. Rotger–Sabat,* 335 F.3d 1, 10 (1st Cir.2003). Pursuant to *Torres–Rosado v. Rotger–Sabat,* "the minimum elements of procedural due process [are] 'some kind of a hearing' and an opportunity to respond to the allegations against [the employee]." *Torres–Rosado,* 335 F.3d at 10 (*quoting Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985))(*emphasis ours); see also O'Neill v. Baker,* 210 F.3d 41, 49 n. 9 (1st Cir.2000). Notwithstanding, in *Torres–Rosado v. Rotger–Sabat,* the Plaintiff alleged "that the procedures employed [during the termination process] departed from applicable regulations under Puerto Rico law." *Id., (emphasis ours* ). To Plaintiff's allegation, in *Torres–Rosado,* the Circuit Court responded that **"[a]n Agency's failure to follow its own rules may be significant in administrative law, but the federal Due Process Clause does not incorporate the particular procedural structures enacted by the state or local governments; these claims should be pursued, if at all, under Puerto Rico law."** *Torres–Rosado,* 335 F.3d at 10 (*citing O'Neill,* 210 F.3d at 49 n. 9) (*emphasis ours* ). In the pending *Motion for Reconsideration* (Docket No. 139), of the instant case, the Plaintiff is alleging the exact procedural claim as the Plaintiff in *Torres–Rosado.* Therefore, whether or not PRNG violated its own **Rules of Conduct and Disciplinary Measures** by choosing to terminate Plaintiff instead of applying other mandated disciplinary measures, even against their own regulation, is an issue that this Court does not have to entertain under a federal due pro-

cess claim.[2] Furthermore, the Court concludes that the Defendants complied with the minimum elements of procedural due process for the following reasons: (1) On July 21, 2004, PRNG sent a letter to the Plaintiff notifying him of the disciplinary charges that were being filed against him as well as PRNG's intention to terminate his employment. Through said letter Plaintiff was also notified of his right to request an administrative hearing, of his right to be accompanied by an attorney and of his right to appeal the agency's final decision, *See* Docket No. 58, pg. 10; *see also* Exhibit I; (2) On December 29, 2004, PRNG sent Plaintiff an amended filing of charges which included additional charges. Said notification consisted of a 52 page report informing Plaintiff of all the disciplinary charges that he was facing as well as PRNG's reasons for filing said charges, *See* Docket No. 58, pg. 13; *see also* Exhibit J; (3) PRNG held two pre-termination Informal Hearings (under the case of *Cleveland Board of Education*, 470 U.S. 532, 105 S.Ct. 1487, and in Puerto Rico under the case of *William Torres Solano v. Puerto Rico Telephone Company*, 1990 JTS 122, 127 D.P.R. 499, 1990 WL 658733 (P.R.)), before an Examining Officer in regards to Plaintiff's disciplinary charges where Plaintiff was able to question witnesses, present evidence and testify, *See* Docket No. 58, pgs. 13–14; *see also* Docket

No. 92, Exhibit 1; (4) On July 11, 2005, PRNG notified Plaintiff of its final ruling regarding the disciplinary charges that were filed against him. Through said notification PRNG informed Plaintiff of his employment termination, *See* Docket No. 92, Exhibit 1. For said reasons, the Court concludes that PRNG duly complied with the aforementioned minimum elements of the federal procedural due process which only requires "some kind of a hearing and an opportunity to respond to the allegations against [the Plaintiff]." *See Torres–Rosado*, 335 F.3d at 10 (*internal citations omitted*). Therefore, Plaintiff's *Motion for Reconsideration* (Docket No. 139), being identical to that made by *Torres–Rosado, Id.*, is hereby **DENIED.**[3]

Now, before taking into consideration the pending issue regarding Plaintiff's "career position", the Court deems proper to state the following. On February 17, 2007, co-defendant, the Puerto Rico National Guard, deemed it necessary to clarify for the record the scope of their arguments by filing a *Motion to Clarify the Scope of Defendant's Arguments, In Light of the Court's Order, Entered Earlier Today* (Docket No. 153). In said motion Co-defendant stated the following:

> it has never been defendants' contention that Mr. Lopez was dismissed because

**2.** Notwithstanding, an issue of motive and intent is not barred under federal law as to the overall factual scenario relating to the purported reasons behind Plaintiff's termination and the lack of PRNG following its own Rules of Conflict and Disciplinary Measures. This matter is for the jury to determine. Furthermore, the Plaintiff has averred a supplemental claim under the Constitution of Puerto Rico. *See* Docket No. 58, pg. 2.

**3.** Notwithstanding, Plaintiff has also averred a supplemental claim under the Constitution of P.R. (Docket No. 58, pg. 2) and hence a due process claim is available under local law but the Court cannot enter an injunctive relief

against the State, the executive agencies and Commonwealth officials in their official capacity, based exclusively under local law, as the same is barred under the Eleventh Amendment. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 101–104, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Court may of course order damages against State officials in their personal capacity and injunctive relief in their official capacities based on a federal civil rights cause of action under § 1983. *See Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Mills v. Maine*, 118 F.3d 37, 54 (1st Cir.1997).

he held a trust position. Indeed, as the record shows, plaintiff's former position with the PRNG is one classified as "career" and was treated as such. Hence it is only logical that plaintiff's letter of dismissal does not make any reference to the trust nature of plaintiff's position. In any event, there's no controversy that '[a]lthough the designation of a position as a trust or career post under the Puerto Rico career service regime is a factor relevant to the determination whether the federal constitution permits political affiliation to be taken into account in making hiring and firing decisions with respect to the position, it is not determinative.' *Cardona–Martinez v. Rodriguez–Quiñones,* 444 F.3d 25, 28–29 (1st Cir.2006)

Defendant's defense is not that plaintiff was in a position classified as one of trust or that the nature of Plaintiffs position was the moving force behind the termination. The issue before the Court is not whether defendants validly dismissed plaintiff because he held a trust position; but rather if because of the duties inherent to the office held, plaintiff enjoyed First Amendment protection against political patronage. The query is simply related to the scope of Plaintiff's First Amendment rights.

Docket No. 153, pgs. 1–2.

 Therefore, the only issue this Court has to decide, to determine whether Plaintiff's career position is subject to the exception stated in *Branti v. Finkel,* involves examining whether Plaintiff's position, no matter how policy-influencing or confidential it may be, relates to "partisan political interests .... [or] concerns." 445 U.S. at 519, 100 S.Ct. at 1295. "It is well-established under Puerto Rico law and First Circuit precedents that career employees [ ... ] who are not in political or policymaking positions, are entitled to due process in association with their termination." *Torres–Rosado,* 335 F.3d at 10 (*citing Flynn v. City of Boston,* 140 F.3d 42, 45 (1st Cir.1998) *and Acosta–Orozco v. Rodriguez–de–Rivera,* 132 F.3d 97, 104 (1st Cir.1997)). In order to decide whether or not Plaintiff's career position was a political position, the Court must review the following:

(1) whether the governmental unit decides "issues where there is room for political disagreement on goals or their implementation," and (2) whether the position's responsibilities "resemble[ ] [those of] a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241–42 (1st Cir.1986) (en banc); *see also Galloza* [*v. Foy*], 389 F.3d [26] at 29–30 [(1st Cir.2004)]; *Duriex–Gauthier v. López–Nieves,* 274 F.3d 4, 9 (1st Cir. 2001).

In determining the second prong, we examine the position's "inherent attributes," for which the job description is the most useful starting point. *Galloza,* 389 F.3d at 31. Job descriptions that are broad or open ended-given the employee's latitude to exercise discretionary judgment-generally indicate a policymaking position, while job descriptions that are narrowly circumscribed inhibit freedom of action and generally indicate a non-policymaking position. *Id.* The job title, however, is not necessarily dispositive in the inquiry, *Duriex–Gauthier,* 274 F.3d at 8. Instead, we examine other indicia including "relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, ... responsiveness to partisan politics

and political leaders ... [and] responsibilities that are not well defined or are of broad scope." *Jiménez Fuentes,* 807 F.2d at 242 (internal quotation marks omitted).

See *Ruiz–Casillas v. Camacho–Morales,* 415 F.3d 127, 131–132 (1st Cir.2005)(*emphasis on original* ).

Identifying generic categories of positions where partisan selection and rejection are permissible has, as we have seen, proven to be an elusive and intractable task. But as courts have addressed the task, they have shed light on useful approaches. A threshold inquiry, which derives from *Branti,* involves examining whether the position at issue, no matter how policy-influencing or confidential it may be, relates to "partisan political interests .... [or] concerns." 445 U.S. at 519, 100 S.Ct. at 1295. That is, does the position involve government decisionmaking on issues where there is room for political disagreement on goals or their implementation? Otherwise stated, do party goals or programs affect the direction, pace, or quality of governance?

*Jiménez Fuentes,* 807 F.2d at 241 (*quoting Branti,* 445 U.S. at 519, 100 S.Ct. at 1295) (*emphasis ours* ). "With this perspective in mind, a court's function, it seems to us, is to do what courts are often called upon to do-to weigh all relevant factors and make a common sense judgment in light of the fundamental purpose to be served." *Id.,* at 242.

As stated in the Job Description (Docket No. 92, Exhibit 2), Plaintiff's position entails the following tasks:

1. PLANS, COORDINATES AND SUPERVISES THE ACTIVITIES OF THE GENERAL SERVICES SECTION RELATING TO MAINTENANCE, PROPERTY, PURCHASING, TRANSPORTATION, REPRODUCTION, INVENTORY, RECEIVING EQUIPMENT, LEASING OF ESTABLISHMENTS AND GENERAL SERVICES. (ENTIRE ISLAND)

2. RESPONSIBLE FOR HIRING AIR–CONDITIONING AND RADIO MAINTENANCE SERVICES, RADIOS, FUMIGATION, CLEANING AND OTHERS, WHETHER WITH FEDERAL OR STATE FUNDS.

3. RESPONSIBLE FOR MATTERS RELATING TO THE TELEPHONE SERVICES (SWITCHBOARD) AND STATE TRANSPORTATION (Regulations, Use, Etc.)

4. RESPONSIBLE FOR SEEING THAT THE AGENCY IS PROVIDED WITH [UTILITY] SERVICE OF WATER, ELECTRICITY AND TELEPHONE.

5. SUPERVISES THE WORK OF EMPLOYEES WORKING IN THE STATE WAREHOUSE, THEIR PURCHASING, INVENTORIES, ETC.

6. OVERSEES PROPER FILLING IN THE PURCHASING LOGS AND CONTROLS AND CONTROL OF EXISTING PROPERTY.

7. WRITES MONTHLY AND ANNUAL REPORTS OF THE WORK PERFORMED IN HIS OR HER AREA.

8. SUPERVISES BID CARRIED OUT IN THE SECTION'S PURCHASING AREA.

9. REVISES AND COORDINATES MATTERS RELATING TO THE MAINTENANCE AND CLEANING OF THE AGENCY.

10. RESPONSIBLE FOR ALL PAYMENTS OF LEASE, PURCHASES AND OTHER SERVICES TO BE MADE AT THE PROPER TIME.

11. RESPONSIBLE FOR SEEING THAT ALL CONTRACTS ARE FILED WITH THE P.R. COMPTROLLER'S OFFICE PURSUANT TO PROVISIONS.

12. OVERSEES FILING SECTION AND DISPOSITION OF AGENCY DOCUMENTS AND EVERYTHING RELATED THERETO.

13. PREPARES DOCUMENTS FOR SIGNATURE OF THE ADJUTANT GENERAL AND THE DIRECTOR OF ADMINISTRATIVE SERVICES, AND CORRESPONDENCE FROM HIS WORK AREA.

14. RESPONSIBLE FOR KEEPING UPDATED EVERYTHING RELATED TO AGENCY'S DEBTS FROM PRIOR YEARS.

15. PERFORMS OTHER TASKS IN KEEPING WITH THE POSITION.

16. SUBMITS REPORT[S] TO OMB, TREASURY, GSA, COMPTROLLER'S OFFICE, AACA[4], PUBLIC INSURANCE COMPANIES, ETC.

17. SUBMITS CONTRACTS TO THE COMPTROLLER'S OFFICE.

18. EMPLOYEE TRAINING IN THE COMPUTER AND PROGRAMMING SYSTEM.[5]

In order to determine whether or not Plaintiff's position entailed responsibilities of a broad scope, the Court inquired about Plaintiff's degree of discretion as to the tasks of leasing establishments and general services and the supervising of bids carried out in the purchasing section. After carefully reviewing the record, the Court has concluded that Plaintiff had little or no discretion.

Notwithstanding said fact, the Bids Regulations of the General Services Administration of Puerto Rico, states that said regulation was created "[t]o establish the procedure to be followed in the Government for any **formal bid** for the acquisitión or disposal of its property;". *Bids Regulations of the General Services Administration, Regulation No. 5*, for the Commonwealth of Puerto Rico, pg. 3 (*emphasis ours*). Furthermore, it states that the "Regulations are adopted for the purposes of establishing the procedure to be followed in every public bid for acquisition or disposal to be carried out by the Administration in order to acquire the goods and services of the agencies of the Executive Branch;". *Id.*, Article 3.[6] The "Board", meaning the Board of Bids of the Administration, is "appointed by the Administrator **to execute bids which shall act as the administrative body of study, evaluation and award of bids** and the functions of which are governed by the "Bids Regulations" of the General Services Administration." *Id.*, Article 6(2)(18). In other words, the Board is the entity directly in charge of the execution of any **formal bidding** for the acquisition or disposal of

4. Automobile Accident Social Protection, 9 LPRA 2051, et seq.

5. However, before entertaining the aforementioned issue, the Court deems necessary to clarify that in January 2001, PRNG designated Eva Aponte as Deputy Director of the General Services Section who would functionally be identified as the Agency's Purchasing Director, reporting directly to the Executive Director of Administration. *See* Docket No. 92, Exhibit 10. In other words, it was Eva Aponte, not the Plaintiff, who was in charge of supervising the bids carried out in the purchasing section since January 2001. However, the Court examines only Plaintiff's functions and does not take into consideration the designation of Eva Aponte for purposes of evaluating a *Branti v. Finkel* analysis. But this fact may be relevant as to the alleged discriminatory action on the merits.

6. Administration—The General Services Administration. See *Bids Regulations of the General Services Administration, Regulation No. 5*, Article 6.

the Governments property. Notwithstanding, the Board of Bids of the Administration does not regulate the execution of all types of bidding. Article 23, of the Bids Regulations states that:

In the following cases the Office need not have a formal bid:

1. An emergency: as defined in the regulations.

2. The amount involved does not exceed four thousand dollars ($4000).

3. Purchase is made from the State or Federal Government of the United States of America or from any foreign country.

4. The minimum prices are fixed by law or competent governmental authority.

5. There is only one supply source.

6. No proposal is presented at the bid and there exists the danger of losing the opportunity of acquiring the necessary nonprofessional supplies or services.

7. When the purchases are made from an agency of the Commonwealth of Puerto Rico.

8. The works the amount of which does not exceed twenty five thousand dollars ($25,000) and the services the amount of which does not exceed ten thousand dollar ($10,000).

9. The works for which, although exceeding said amounts, it has been impossible to obtain a contract after having attempted to obtain one by the bid procedure, if the Administrator deems it more advisable that they be constructed by administration.

10. The works which, no matter their amount, are declared to be essentially necessary or urgent by the Administrator.

11. The works which require special care in their execution from a techni-

cal point of view, provided it is so determined by the Administrator.

12. The works which are executed in buildings which, because of the use to be given, require extreme measures of security and protection for the building in itself or for its occupants and it is so declared by the Governor of Puerto Rico by Executive Order.

13. Where professional and consultant services are involved which do not require bid procedure and the work to be performed does not constitute a position.

Hence, in the aforementioned situations, instead of the Board of Bids of the Administration executing a **formal bidding** for the acquisition or disposal of the Governments property, the own agency is authorized to execute its own bidding for the acquisition or disposal of its own property. Notwithstanding said fact, the Board of Bids has limited the agency's discretion to the aforementioned cases. Therefore, if the Plaintiff was in charge of PRNG's leasing and purchasing for the general services area at one point or another, Plaintiff would not have any discretion whatsoever as to any type of **formal bidding,** which as aforestated is conducted by the Board of Bids of the Administration, and only a **limited discretion** as to the specific instances stated in Article 23, of the Bids Regulations. For said reason, the Court has concluded that Plaintiff's former position did not entail "responsibilities that [were] not well defined or [ . . . ] of [a] broad scope." *See Ruiz–Casillas,* 415 F.3d at 131–132 (1st Cir.2005)(*quoting Jiménez Fuentes,* 807 F.2d at 242)(*emphasis ours)(internal quotations omitted* ). Furthermore, the Court concludes that even if Plaintiff's position entailed some "discretion", the same failed to reach the threshold **"involv[ing] government decisionmaking on issues where there is**

room for political disagreement on goals or their implementation ...", nor did it relate to "partisan political interests .... [or] concerns." *Jiménez Fuentes*, 807 F.2d at 241 (*quoting Branti*, 445 U.S. at 519, 100 S.Ct. at 1295 (*emphasis ours)(internal quotations omitted.)*).

Having analyzed and resolved the previous issue the Court shall proceed to discuss whether or not Plaintiff's former position was one of policy-influencing and/or confidential in nature. After applying the *Branti/Elrod* test, the Court concludes that the overall functions of Plaintiff's position, as perceived from his job description, no matter how policy-influencing or confidential Defendants allege it may be, do not relate to any "partisan political interests .... [or] concerns." 445 U.S. at 519, 100 S.Ct. at 1295. Nor do they "involve government decisionmaking on issues where there is room for **political disagreement** on goals or their implementation[.]" *See Jiménez Fuentes*, 807 F.2d at 241 (*emphasis ours*). Furthermore, Plaintiff's position does not entail authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders. For said reasons, it is the Court's conclusion that Plaintiff's former career position, examined through the eighteen (18) duties described above, was not a political or policymaking position, on the contrary it was a career position protected from political patronage.

▮ Finally, in regards to Defendant's qualified immunity defense, the Court does not agree with Defendants contention that this case presents a close enough call for Defendants' individual-capacities to be shielded by qualified immunity.

Our starting point is the principle that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights **of which a reasonable person would have known.**" *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). We have used a three-prong analysis for evaluating qualified immunity claims.

Thus, we must determine:

(1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right. *Wilson v. City of Boston*, 421 F.3d 45, 52 (1st Cir.2005).

. . . .

Here we ask whether the facts, "[t]aken in the light most favorable to the party asserting the injury ... show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). As we have noted, "[t]he first prong inquiry at this 12(b)(6) stage is unlikely to be very specific, given that federal civil practice is based on notice pleading, where great specificity is not required, and that there is no heightened pleading requirement for civil rights cases." *Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 61 (1st Cir.2004) (citations omitted).

*Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio, v. Juan A. Florez Galarza*, 484 F.3d 1 (1st Cir.2007)(*emphasis ours*).

In the instant case, Plaintiff avers that he began working for PRNG on March 3,

1997, as the General Services Director which was not a political or policymaking career position. *See* Docket No. 58, pg. 4. Plaintiff, a known affiliate of the New Progressive Party (N.P.P.), began working for PRNG under the N.P.P. administration. *See Id.* Plaintiff avers that immediately after the Popular Democratic Party (P.D.P) won the general elections that were held in Puerto Rico on November 2000, Co-defendants started a campaign to deprive Plaintiff of his rights as a career employee, to persecute him and despoil him of his duties, authority and responsibilities, in violation of his rights under the Constitution and laws of the United States and under the Constitution and laws of the Commonwealth of Puerto Rico. *See* Docket No. 58 at pg. 5. For example and amongst other causes, Plaintiff states that Co-defendants attempted to despoil him of his responsibilities to supervise and give instructions to PRNG employees in his department, to manage the attendance lists and to deny access to employee meetings. *See Id.,* pg. 5–6. Furthermore, Plaintiff states that not only was he deprived of his duties in the Transportation Area, but he was also despoiled of his purchasing duties when Juan E. Colon–Garcia, the Executive Director of Administration of PRNG, appointed Eva Aponte–Marichal as Auxiliary Executive Sub–Director of General Services, who would functionally be identified as the **Agency's Purchasing Director,** reporting directly to co-defendant Juan E. Colon–Garcia. *See Id.,* pg. 5–6; Docket No. 92, Exhibit 10. Plaintiff alleges that said position was created at that moment and that Co-defendant Aponte–Marichal

was appointed on a provisional basis. *See Id.,* pg. 5. Moreover, Plaintiff avers that on February 5, 2001, the political discrimination pattern intensified when the Defendants started requiring all personnel under Plaintiff's supervision to report directly to the Auxiliary Executive Director of Administration and the Auxiliary Executive Sub–Director of General Services instead of reporting to the Plaintiff although its was within his duties described *infra. See* pg. 11–13 of the instant *Opinion and Order* (e.g. Tasks Num. 1, 5, 6, 8, 11, 12 and 18). Furthermore, Plaintiff avers that Defendants appointed other employees to do Plaintiff's work without previously notifying the Plaintiff, that he was prohibited from attending seminars related to his department, that he was denied access to PRNG's information system and that he was deprived of his password to register contracts. *See* Docket No. 58, pg. 6–7.[7] (Defendant was subsequently charged with not complying with his duties to register the contracts of PRNG, through precisely the information system which he was denied access, pursuant to Plaintiff's version of the facts.)

Plaintiff states that on January 16, 2001, he acquired an attorney and started sending letters to the Defendants in order to inform them of the political discriminatory pattern that Plaintiff was being subjected. *See* Docket No. 58, pg. 7. Notwithstanding, Plaintiff states that no action was taken to mitigate the pattern of conduct against him. Even when Jose R. Negron–Fernandez, Assistant to the Secretary of the Office of the Governor in the areas of Security, Justice and Correction, ordered

---

**7.** Although "[t]he Puerto Rico Supreme Court has said that public employees have no property interest in their job duties[,]" a degrading of an employee by stripping his duties may be considered as evidence sufficiently severe that may raise to an "unreasonably inferior" position which in turn may warrant a short of

termination or constructive discharge cause of action. *See Torres–Martinez v. Puerto Rico Dept. of Corrections,* 485 F.3d 19 (1st Cir.2007)(*emphasis ours*); *see also Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1218 (1st Cir.1989).

co-defendant Francisco A. Marquez–Haddock, the Adjutant General of PRNG, to meet with Plaintiff's attorney to discuss Plaintiff's claim, again no mitigating action was taken. *See Id.*, pg. 7. Consequently, Plaintiff went to co-defendant, Francisco A. Marquez–Haddock and demanded a meeting. *See Id.* During said meeting Plaintiff alleges that he informed Marquez as to all the abuse and humiliations he was being subjected to and as to the fact that he had been despoiled of his functions. *See Id.* Plaintiff states that after he informed Mr. Marquez what was going on, Mr. Marquez simply asked Plaintiff what was it that he wanted him to do. *See Id.* Although Plaintiff continued to write letters and send copies to the Human Resources Director, nothing affirmative to mitigate the factual pattern was effectuated. *See Id,* pg. 8.

On July 21, 2004, Plaintiff received a letter informing him of the disciplinary charges that were being taken against him by PRNG, as well as of PRNG's intention to terminate him from his career position as Director of General Services. *See Id,* pg. 10. On December 29, 2004 after Plaintiff filed the instant case, Plaintiff received an amended report informing him of new disciplinary charges that were being added to the original charges. *See* Docket No. 58, pg. 13. In regards to the charges that were being taken against him, PRNG provided Plaintiff with two informal pre-termination hearings which culminated in Plaintiff's termination. *See Id.* at 13–14. On July 11, 2005, Plaintiff received the letter which informed of his employment termination as Director of General Services of the Puerto Rico National Guard. *See Id.* at 14–15.

Taking the facts alleged in the instant case in the light most favorable to the party asserting the injury, the Court concludes that the Defendants' individual-capacities are not shielded by qualified immunity. Applying the three prong analysis, the Court has found the following: (1) that the Plaintiff has alleged the deprivation of an actual constitutional right, by alleging that he has been terminated from his non-political career position as PRNG's Director of General Services, in violation of his First Amendment political affiliation right; *See Rodriguez–Marin,* 438 F.3d at 84 ("Plaintiffs' allegations, if true, clearly established a violation of their First Amendment rights ..."); (2) that at the time Plaintiff was terminated it was pellucid from his job description that he was a career employee, since "the position at issue, no matter how policy-influencing or confidential it may be, [it fails to relate to] partisan political interests .... [or] concerns." *See Jiménez Fuentes,* 807 F.2d at 241 *(quoting Branti,* 445 U.S. at 519, 100 S.Ct. at 1295 *(emphasis ours)(internal quotations omitted.)); see also Rodriguez–Marin,* 438 F.3d at 84 ("... and such right was well established at the time of the violation."); and (3) that the record clearly shows that an objectively reasonable official could have known that the actions that were being taken against the Plaintiff violated his First Amendment political affiliation right. *See Pagan,* 448 F.3d at 31 (The qualified immunity defense "... protects all but 'the plainly incompetent [and] those who knowingly violate the law.' ")(*quoting Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)*(emphasis on original)); see also Davis v. Scherer,* 468 U.S. 183, 193, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Surprenant v. Rivas,* 424 F.3d 5, 14 (1st Cir.2005). The Court therefore concludes that a mere cursory reading of Plaintiff's job description reflects that although he may have enjoyed discretion, said discretion fails to relate to "partisan political interests .... [or] concerns." *See Jiménez Fuentes,* 807 F.2d at 241 (*quoting*

*Branti,* 445 U.S. at 519, 100 S.Ct. at 1295 *(emphasis ours)(internal quotations omitted.)*)

Therefore, since the Court has concluded that Plaintiff's career position was protected from political patronage and that the Defendants are not entitled to qualified immunity, the Court hereby **DENIES** Defendants' *Urgent Motion to Request a Ruling on the Individual–Capacity Defendants' Plea for Qualified Immunity* (Docket No. 141).[8]

## IV. CONCLUSION

For the reasons stated above, Plaintiff's *Motion for Reconsideration* (Docket No. 139), as well as Defendants' *Urgent Motion to Request a Ruling on the Individual–Capacity Defendants' Plea for Qualified Immunity* (Docket No. 141) are hereby **DENIED.** In regards to Plaintiff's career position, the Court has concluded that it was not a policy-influencing position relating to partisan political interests or concerns. In other words, it is the Court's conclusion that Plaintiff's position as Director of General Services was not a position of trust requiring political affiliation, but a career position protected from political patronage. Furthermore, even if Plaintiff were in a non-career position, meaning in a "trust position", he may not be terminated due to his adherence to any political party. See *Rosario–Urdaz v. Rivera–Hernandez,* 350 F.3d

219, 224 (1st Cir.2003).[9] This determination, the Court deems, must be decided by a jury since Defendants have made a colorable disciplinary defense which in turn is highly dependant on issues of credibility, motive and/or intent. *See Amended Opinion and Order* Docket No. 138.

The Court clarifies that although the case is close as to the merits on the alleged discrimination, because it is highly charged with issues of credibility and motive and/or intent, the case is not close as to Plaintiff's position being one where his duties "involve government decisionmaking on issues where there is room for **political disagreement** on goals or their implementation[.]" *See Jiménez Fuentes,* 807 F.2d at 241 *(emphasis ours* ).

As to Plaintiff's *Motion for Reconsideration* (Docket No. 139), the Court of Appeals has made pellucid that a state agency's neglect in following its own disciplinary rules does not reach the threshold of a federal violation of due process but may constitute a State violation of due process. *See Torres–Rosado,* 335 F.3d at 10 ("these claims should be pursued, if at all, under Puerto Rico law").

**IT IS SO ORDERED.**

---

8. The Court takes notice that the First Circuit Court of Appeals has begun to note that

 [b]ecause immunity defenses may be raised at several different stages of a case, the potential for abuse is substantial ... the right to assert an immunity defense must be balanced with the district courts obligation to ensure the "just, speedy and inexpensive" resolution of cases ... With these considerations in mind, we have recognized that district courts may be justified in rebuffing pre-trial attempts to assert immunity defenses if those attempts are not undertaken with a reasonable degree of diligence

... Although we recognize the importance of defendants right to assert immunity defenses before trial, those rights are not sacrosanct.
See *Digno Torres v. Commonwealth of Puerto Rico,* 485 F.3d 5 (1st Cir.2007)

9. The fact that Plaintiff was granted two pre-termination hearings under *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), may constitute an implied recognition that his position was a career position.